**AMERICAN SAFETY CASUALTY INSURANCE COMPANY, Plaintiff/Appellee,**

v.

**NEVADA RISK MANAGEMENT, INC., Defendant/Appellant.**

No. 03–15795.

D.C. No. CV–01–00084–PMP.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 2004.

Decided Oct. 21, 2004.

James D. Carraway, Esq., Murchison & Cumming, Las Vegas, NV, for Plaintiff–Appellee.

J. M. McGroarty, Esq., J. Michael McGroarty, Chtd., Las Vegas, NV, for Defendant–Appellant.

Before TROTT and MCKEOWN, Circuit Judges, and SHADUR,* District Judge.

## MEMORANDUM **

Nevada Risk Management, Inc. ("Nevada Risk") appeals the district court's enforcement of a settlement agreement that was reached in two lawsuits between Nevada Risk and American Safety Casualty Insurance Co. ("American Safety"): One of those was a state court action brought by Nevada Risk and then removed to the district court by American Safety on diversity of citizenship grounds, and the other was an independent federal action brought by American Safety against Nevada Risk. We have jurisdiction under 28 U.S.C. § 1291.

There is no dispute as to the sequence of events. In mid-March 2002 counsel for American Safety reported to the district court that the parties had reached a tentative agreement except for one issue, as to which American Safety was to deliver to Nevada Risk a list of what it believed were the latter's surviving obligations under the preexisting contract between them—a contract that the parties then agreed had been terminated. Just a week later American Safety's counsel faxed a draft copy of a settlement agreement and mutual release to Nevada Risk's counsel, and a little over a month later American Safety furnished Nevada Risk with the promised list of Nevada Risk's surviving obligations.

What then ensued resembled a question in a Contracts 101 final exam. On May 16 American Safety's counsel faxed an unsigned copy of the final version of the settlement document to Nevada Risk's counsel. Before 10:40 a.m. the following morning, (1) an American Safety management representative had signed and sent a counterpart of that document to its counsel and (2) both Nevada Risk's counsel and a member of its management had signed another counterpart and faxed it to American Safety's counsel, who immediately signed it as well. That sequence completed the process that was contemplated in the settlement document itself (quoted here verbatim):

> This Settlement Agreement and Mutual Release may be executed in counter parts with the same force and effect as if executed in one complete document. However, this Settlement agreement and Mutual Releases shall not become effective unless and until each of the parties has executed at least one counter part.

For whatever reason—whether due to a change of heart on Nevada Risk's part or whether, as Nevada Risk would have it, it had mistakenly signed and transmitted the settlement agreement—one of the lawyers in the office of Nevada Risk's counsel sent another fax to American Safety's counsel within the next hour, purporting to disavow the settlement. That gave rise to the present dispute: Although Nevada Risk acknowledges that its later attempt at revocation would be wholly ineffective if American Safety's communication had been an offer that Nevada Risk had in turn accepted, it urges that what American Safety had sent on May 16 was merely an offer to make an offer. If that were the case, Nevada Risk's response would constitute its own offer that it was free to revoke before it received an acceptance from American Safety.

But a full evidentiary hearing by the Magistrate Judge at the district court level led to the opposite conclusion: Nevada

---

* The Honorable Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

Risk had indeed accepted American Safety's offer, so that its attempted revocation was a nullity. We have reviewed the findings and conclusions in that respect, and we hold that the determination below was neither clearly erroneous from a factual perspective nor based on any error of law (*see, e.g., Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir.1994)). Nor, under the same standard of review, do we find any merit in Nevada Risk's other contention that the settlement agreement contained an essential term that was unenforceable because of its claimed indefiniteness.

AFFIRMED.